UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ALBERTHA GARRETT | * | CIVIL ACTION NO. 2:07-cv-1975 |
| | * | |
| Plaintiff | * | JUDGE HAIK |
| | * | |
| VERSUS | * | MAGISTRATE JUDGE METHVIN |
| | * | |
| STATE FARM FIRE AND CASUALTY COMPANY, ET AL | * | |
| Defendant | | |

## MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
## MOTION TO EXLUDE

**NOW INTO COURT**, through undersigned counsel, comes Defendant **STATE FARM FIRE AND CASUALTY COMPANY** (hereinafter "State Farm"), who submits this Memorandum in Support of its Daubert Motion/Motion in Limine/Motion to Exclude Evidence pertaining to testimony of Kermith Sonnier and the Cost Control Services Estimate dated September 20, 2007.

## UNDISPUTED FACTS

Plaintiff filed this action seeking to recover additional payments from State Farm for damage her property located at 1801 9th Street, Lake Charles, Louisiana allegedly resulting from Hurricane Rita. It is undisputed that Plaintiff's property was insured under a policy of insurance issued by State Farm with dwelling coverage in the amount of $93,662.00, dwelling extension coverage in the amount of $9,366.00, and contents coverage in the amount of $65,564.00. *Statement of Uncontested Facts at ¶ 1; Exhibit "A."*

Jury Trial in this matter is currently set for July 20, 2009. In connection with this trial date, Plaintiff has listed Kermith Sonnier of Cost Control Services, as an expert witness. *Statement of Uncontested Facts at ¶ 2* It is undisputed that Cost Control inspected Plaintiff's

1

residence for the first time in September of 2007, and prepared a single estimate dated September 20, 2007. *Statement of Uncontested Facts at ¶ 3.*  It is undisputed that Kermith Sonnier, the sole Cost Control representative listed by Plaintiff as an expert witness, did not conduct the September 2007 inspection. *Statement of Uncontested Facts at ¶ 4.*  It is undisputed that Tommy Greenlee, an employee of Cost Control, conducted the September 2007 inspection that is the basis for, and is the one who prepared, the estimate that is the subject of this Motion. *Statement of Uncontested Facts at ¶ 5.*  It is undisputed that Plaintiffs have not listed, and do not intend to call, Tommy Greenlee as a witness at trial. *Statement of Uncontested Facts at ¶ 6.*

On information and belief, Kermith Sonnier has not inspected the residence that is the subject of this litigation as of the date of the filing of this Motion. *Statement of Uncontested Facts at ¶ 7.*  There have been no supplemental estimates produced by Plaintiff as a result of any inspection by Kermith Sonnier. *Statement of Uncontested Facts at ¶ 8.*  The deadline for producing expert reports has long passed.  State Farm therefore anticipates that there will be no further estimates from Cost Control forthcoming.

It is further undisputed that several events occurred between September 23 and 24, 2005, and September 2007 that had a significant impact on one's ability to properly inspect and estimate the damages caused to Plaintiff's property as a result of Hurricane Rita.

State Farm respectfully asserts that Kermith Sonnier should not be permitted to testify concerning damage to the subject residence as a result of Hurricane Rita, as he did not and has not inspected the subject residence, and did not prepare the estimate Plaintiff intends to rely upon at trial.  Additionally, due to events occurring between Hurricane Rita and the September 2007 inspection by Cost Control that significantly affected the ability to accurately estimate damages to Plaintiff's property, State Farm respectfully asserts that the Cost Control estimate should be excluded from evidence as lacking any basis, and as totally unreliable.

**LAW AND ARGUMENT**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the Supreme Court charged the federal district courts with a gatekeeper function to keep unreliable expert testimony out of evidence. 509 U.S. at 589. The party seeking to introduce the expert's testimony must prove by a preponderance of the evidence that the expert is qualified, the testimony is reliable, and that the testimony is relevant. *Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir.1998). This gate-keeping function extends to all expert testimony. *Kumko Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999).

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert,* 509 U.S. at 592, 113 S.Ct. at 2796. Both prongs of the Daubert test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595, 113 S.Ct. at 2796. The first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S.Ct. at 2797, 125 L.Ed.2d at 484.

The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert,* 509 at 591. The court must look to whether expert testimony proffered is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id., citing United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir.1985). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence."

When expert testimony is challenged under *Daubert,* the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269 (5th Cir.1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.*

1. **The Cost Control Estimate is not Based on Sound Methodology**

It is undisputed that State Farm inspected the subject residence four times - on November 11, 2005, January 5, 2006, June 8, 2006 and August 28, 2007, all before Cost Control ever laid eyes on the subject property. *Statement of Uncontested Facts at ¶ 9.* In fact, based on information provided in this litigation to date, Mr. Kermith Sonnier has not inspected the subject residence and has prepared no estimate relating to the property in question. *Statement of Uncontested Facts at ¶ 7.* The Cost Control estimate that has been prepared and provided by Counsel was based on an inspection by Tommy Greenlee, which did not occur until September of 2007, two long years after Hurricane Rita damaged Plaintiff's property. *Statement of Uncontested Facts at ¶ 5.*

Between the time Rita struck and before Cost Control prepared its estimate, Plaintiff filed a criminal complaint with the Calcasieu Parish District Attorney's Office alleging that her contractor, Mr. James Lewis, stole a portion of the funds paid to Plaintiff by State Farm. See E*xhibit "B".* Plaintiff specifically alleged that Mr. Lewis began work on her house in the last week of May, 2006. Plaintiff attested that "[e]verything was bought for my home, except carpet and kitchen flooring." See *Exhibit "B".* She further attested that Mr. Lewis left her home a

"total disaster". See *Exhibit "B"*. She further alleged that the furniture in her home was ruined "due to his mishandling." See *Exhibit "B"*.

Detective Warner Levy, who initially investigated the theft committed by Lewis prepared a report based on information provided by Plaintiff on September 25, 2006, and specifically indicated that Plaintiff had advised that her home had suffered additional water damage because of the condition that Mr. Lewis had left her home in after not completing the repairs for which he had been paid. See *Exhibit "C"*.

This is consistent with complaints made by Plaintiff. Specifically, On March 13, 2006, the insured contacted the Claims Office indicating that she was going to Houston. *Statement of Uncontested Facts at ¶ 10; Exhibit "D" at pg. 0016, entry #68-69.* Plaintiff advised the claims office that her "contractor did not do her right." *Statement of Uncontested Facts at ¶ 11; Exhibit "D" at pg. 0016, entry #69.*

On March 15, 2006, the insured came into the Claims Office advising again of concern about the contractor doing work on her home. *Statement of Uncontested Facts at ¶ 12; Exhibit "D" at pg. 0016, entry #70.* The claims representative explained to Plaintiff that State Farm had no control over the contractors who do the work at her house, or the materials that they use. *Statement of Uncontested Facts Statement of Uncontested Facts at ¶ 13; Exhibit "D" at pg. 0016, entry #70.* Plaintiff also complained about additional damages being caused to her home as a result of the work being done by the contractor. Plaintiff was advised to get her contractor to give her a supplemental estimate and that if it was different than State Farm's previous estimates, the property could be re-inspected with a contractor. *Statement of Uncontested Facts Statement of Uncontested Facts at ¶ 14; Exhibit "D" at pg. 0016, entry #70*

On March 16, 2006, Plaintiff called the claims office, at which time Erik Christiansen, a claims adjuster, contacted Plaintiff. *Statement of Uncontested Facts at ¶ 15; Exhibit "D" at pg.*

5

*0015, entry #71-72.* Plaintiff specifically advised about damages caused by her contractor's workmanship. *Statement of Uncontested Facts at ¶ 16.*

It is clear that what Tommy Greenlee inspected in September of 2007 was not damage that was the result of Hurricane Rita. Plaintiff's own statements indicate that John Lewis left her property in a total disaster, and that additional damage occurred to her personal property and structure as a result of his workmanship. This all occurred before the September 2007 inspection by Cost Control.

Further, undersigned counsel recently learned that a church group performed work on the subject residence. *Statement of Uncontested Facts at ¶ 17.* Upon learning of this, undersigned contacted Plaintiff counsel, who confirmed that a church group had in fact performed some work at the subject property. *Statement of Uncontested Facts at ¶ 18.* Undersigned has requested that Plaintiff update her responses to discovery to provide the specifics related to this work. Plaintiff has failed to update the responses to provide a single invoice for work actually performed at subject residence, whether by the church group, any contractor, or any other person or other entity. *Statement of Uncontested Facts at ¶* 19.

The Cost Control estimate is not based on sound methodology, as it was not prepared (1) until 2 years post-storm, (2) after one of Plaintiff's contractors left her home in a "total disaster" before Cost Control ever saw it, (3) Plaintiff admits that the subject property sustained additional damage due to workmanship of contractors between the storm and preparation of the estimate and (4) additional repairs by a church group have been made to the subject property. This estimate is clearly unreliable and should be excluded from evidence. Further, Kermith Sonnier, who did not prepare the estimate or inspect the property in question, should be precluded from testifying at trial.

2. **The Cost Control Estimate is Not Relevant**

For the reasons set forth above and the additional reasons set forth below, the Cost Control estimate is likewise not relevant to these proceedings.

First, Plaintiff never made a single complaint about any damage to the siding on her home and none was discovered on any of the inspections of Plaintiff's property, two of which occurred with Plaintiff's own contractors. *Statement of Uncontested Facts at ¶ 20.* As set forth above, State Farm inspected the subject residence on November 11, 2005, January 5, 2006, June 8, 2006 and August 28, 2007. At no time before or during any of these inspections did Plaintiff ever indicate that she had any damage to her asbestos siding as a result of Hurricane Rita, and none was found upon inspection.

Most importantly, Cost Control estimated $113,218.65 in exterior damage at Plaintiff's residence, $109,450.71 of which is for the removal and replacement of asbestos siding, none of which was ever alleged to be damaged by Hurricane Rita. *Statement of Uncontested Facts at ¶ 21.* Further, the asbestos siding at the subject property was removed and at least partially replaced before Cost Control ever inspected the property. See photographs taken August 28, 2007 attached hereto as *Exhibit "F"*. *Statement of Uncontested Facts at ¶ 22.* Although State Farm propounded discovery to Plaintiff specifically requesting invoices for any work actually performed on the subject residence, Plaintiff responded on March 9, 2009 producing not a single invoice for any work actually performed on the subject residence. This is so despite that the asbestos siding has now been completely removed, and replaced with a different type of siding. *Statement of Uncontested Facts at ¶ 23; See* Photographs of Plaintiff's residence in its current condition attached hereto as Exhibit "E". Plaintiff certainly would have incurred some cost relative to the removal and replacement of the siding on her home. Certainly Plaintiff would have produced such documentation if she had incurred some actual cost associated with the

siding if such cost exceeded amounts already paid to her by State Farm. However no such evidence has been provided.

Cost Control's estimate for removal and replacement of asbestos siding which had been already been removed and partially replaced with vinyl siding at the time the subject property was inspected is completely irrelevant to these proceedings, especially in light of Plaintiff's failure to produce a single document to support any cost actually incurred for the siding's removal and replacement. Further, in light of the additional interior damage occurring to the property as a result of the actions of John Lewis, the estimate of interior damage is likewise irrelevant. The estimate and any testimony related to it should be excluded from evidence.

**3. The Testimony of Kermith Sonnier on Causation is Unreliable**

Kermith Sonnier is not qualified to express an expert opinion regarding the cause of the alleged damage to the subject residence. Mr. Sonnier is an adjuster and the sole owner of Cost Control, who makes his living evaluating the **cost** to repair damage to properties like the Garrett home. *Statement of Uncontested Facts at ¶ 24.* Mr. Sonnier is **not** qualified to testify about the **cause** of such damages. *Statement of Uncontested Facts at ¶ 25.* Mr. Sonnier has admitted under oath that when he is contacted to prepare an estimate, his duties consist of going out to the property to "scope the damage, talk to the insured, see what they tell you, and write what you see that's damaged." *Statement of Uncontested Facts at 26.¶*

He has admitted in deposition that in making the decision as to what is hurricane-related and what is not, he first lets the insured tell him what the insured believes was caused by the hurricane and then he, or another adjuster, looks only at the damaged property to determine if anything else appears to be storm-related. *Statement of Uncontested Facts at ¶ 27.* However, in doing so, Mr. Sonnier has admitted that there is often uncertainty and doubt surrounding the **cause** of certain items of damage. *Statement of Uncontested Facts at ¶ 28.* For instance, Mr.

Sonnier has testified that "if the slab was cracked or the bricks would be cracked, you know, sometimes you have a doubt about that…." *Statement of Uncontested Facts at ¶29.* Additionally, Mr. Sonnier lacks any training, education, or specialized knowledge regarding wind loads, weather patterns, exertions of force on structures, or any other scientific or technical knowledge that would make his testimony on the subject of causation reliable. *Statement of Uncontested Facts at ¶ 30.* Specifically, Mr. Sonnier is a carpenter by trade. *Statement of Uncontested Facts at ¶ 31.* Mr. Sonnier's highest level of formal education is high school. *Statement of Uncontested Facts at ¶ 32.* Even before he graduated from high school he began training as a carpenter and worked in that trade the majority of his life. *Statement of Uncontested Facts at ¶ 33.* Then, in the late 1970s he began doing adjusting work and continues to work in that field to this day. *Statement of Uncontested Facts at ¶ 34*

Mr. Sonnier's role as an estimator is to following the blueprint of damages found by a licensed engineer, who is ultimately the "man who put[s] the seal on it." *Statement of Uncontested Facts at ¶ 35.* Mr. Sonnier has never been trained or worked as an engineer, a physicist, a meteorologist, or in any other field that would support testimony as to the cause of damage to a structure." Based on his experience, Mr. Sonnier's testimony, at most, should be limited to the extent and cost of damages. *Statement of Uncontested Facts at ¶ 36.*

Based on Mr. Sonnier's own testimony he is unqualified to give an expert opinion as to the cause of any damage to the Garrett home and any such opinion would be wholly unreliable. Mr. Sonnier himself relies on another expert, typically an engineer, to tell him what damage is or is not hurricane-related. Only after receiving that guidance can Mr. Sonnier do what he is trained to do – estimate the cost of repairs for those items of damage. Mr. Sonnier himself is incapable of determining the causation himself. Any such determination by Mr. Sonnier amounts to

nothing more than an uneducated guess, which is unreliable and inadmissible under Federal Rule of Evidence 702 and *Daubert* and its progeny.

## **CONCLUSION**

The unreliability of the Cost Control estimate is cannot be disputed. The inspection by Cost Control that occurred two years post-storm was not based on the condition of property as a result of Hurricane Rita, but was based on its condition after it had been left a "total disaster", after additional interior damage had occurred due to inadequate construction, and after a significant amount of work had already been performed at the subject residence. For these reasons, the Cost Control estimate is unreliable and irrelevant. The estimate should be excluded from evidence and Kermith Sonnier should likewise be precluded from testifying regarding the property or the estimate.

Finally, if allowed to testify, Mr. Sonnier's testimony should be limited to the cost of any repairs found to be related by others to Hurricane Rita.

                                        Respectfully submitted,

                                        STOCKWELL, SIEVERT, VICCELLIO,
                                        CLEMENTS & SHADDOCK, L.L.P.

                            BY:   s/Todd M. Ammons
                                    TODD M. AMMONS
                                    La. Bar Roll No. 21441
                                    SOMER G. BROWN
                                    La. Bar Roll No. 31462
                                    One Lakeside Plaza, 4th Floor
                                    Chase Building
                                    P.O. Box 2900
                                    Lake Charles, LA  70602

                                    Attorneys for State Farm Fire and Casualty Company

**CERTIFICATE OF SERVICE**

This certifies that a true and correct copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to the following by operation of the court's electronic filing system.

>Jackie South
>501 Broad St.
>P. O. Box 3010
>Lake Charles, LA 70602
>Attorney for Plaintiff, Albertha Garrett.

Lake Charles, Louisiana on this 27th day of April, 2009.

>s/ Todd M. Ammons
>TODD M. AMMONS